Joseph R. Scholz
Thomas Finn
Benjamin Klein
**McCARTER & ENGLISH, LLP**
250 W. 55th Street, 13th Floor
New York, NY 10019
(212) 609-6800
jscholz@mccarter.com
tfinn@mccarter.com
bklein@mccarter.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AISHANGYOU LIMITED, PIJUN LIU and WENWEN YU, Derivatively on Behalf of Nominal Defendant, NEXT TECHNOLOGY HOLDING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>HECHUN WEI and BIMING GUO,<br><br>Defendants,<br><br>-and-<br><br>NEXT TECHNOLOGY HOLDING, INC. d/b/a WETRADE GROUP, INC.,<br><br>Nominal Defendant. | Civil Action No.: _____________<br><br>**SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

## INTRODUCTION

Plaintiffs AiShangYou Limited ("AiShangYou"), Pijun Lui, and Wenwen Yu (collectively, "Plaintiffs"), by and through their undersigned counsel, submit this Shareholder Derivative Complaint (the "Complaint") derivatively on behalf of nominal defendant Next Technology

Holding, Inc. d/b/a WeTrade Group, Inc. (the "Company"), against certain former officers of the Company: Hechun Wei ("Wei") — former Chief Executive Officer and Director of the Company and Biming Guo ("Guo") — former Director, Chairman of the Board of Directors of the Company (the "Board"), and Chair of the Audit Committee of the Board (together, with Wei, the "Defendants"). Plaintiffs make the following allegations based upon individual and personal knowledge and, as to all other matters, based upon information and belief. Plaintiffs' information and belief is based on an investigation that included a review of, among other things: (a) documents in Plaintiffs' possession; (b) the Company's filings with the United States Securities and Exchange Commission (the "SEC"); and, (c) the Company's public statements.

## NATURE OF THE ACTION

1. This is a shareholders' derivative action brought for the benefit of the Nominal Defendant, the Company. This derivative action is brought against Wei and Guo based on the following conduct: (i) Defendants' authorization and issuance of false and/or misleading statements in two Schedule 14C Information Statements in or around May 2023 (the "Statements") and a form 8-K in or around November 2023 (the "8-K"); and (ii) Defendants' authorization and issuance of a false, misleading, and ineffective majority written consent in lieu of a special meeting of the shareholders pursuant to a purported 51.9% consent of the Company's common stock shareholders (the "Consent")—including the invalid and/or fraudulent consent of Future Science Ltd., upon information and belief, a nonprofit organization registered in Singapore under the name CLG and having a registration number UEN 202341003C (which purported to own 26.8% of the Company's common stock at the time of the Consent).

2. This derivative action seeks to: (i) remedy Defendants' breaches of their fiduciary duties owed to the Company and its shareholders regarding the above conduct, (ii) remedy

Defendants' breaches of the Company's Bylaws, and (iii) hold Defendants liable for violating Sections 10(b) and 14(c), and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act") through their issuances of the false and misleading representations in the Statements and the 8-K.

3. Defendants must be held responsible for making false and misleading statements, the purpose of which was to freeze out other shareholders, including Plaintiffs, and instead pursue their own financial gain at shareholder expense, (i) in contravention of their fiduciary duty and duty of loyalty, (ii) by disseminating false statements, and (iii) using false and deceptive statements and sham transactions as part of a knowing and intended scheme to defraud shareholders.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331, as part of the claims arise under the laws of the United States.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity among the parties and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. This Court has personal jurisdiction over each Defendant named herein because each Defendant either has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice, or alternatively pursuant to Federal Rule of Civil Procedure 4(k)(2) because none of the Defendants have sufficient contacts with any other U.S. State so as to render the exercise of jurisdiction in any state permissible.

7. Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the transactions and wrongs complained of herein—including Defendants' primary participation

in the wrongful acts detailed herein and their aiding in the violation of fiduciary duties owed to the Company—occurred in this District, and Defendants have received substantial compensation in this District by conducting business here and engaging in numerous activities that have an effect in this District.

## THE PARTIES

8. Plaintiff AiShangYou Limited is a company organized under the laws of the British Virgin Islands with an address of Room 205-2, No. 300, Miaocheng Village, Miaocheng Town, Huairou District, Beijing, China. At all times relevant to the claims asserted herein, Plaintiff AiShangYou has been a shareholder of the Company.

9. Plaintiff Pijun Lui is a resident of China with an address of Toutun Village, Niujia Manchu Town, Wuchang City, Heilongjiang Province, China. At all times relevant to the claims asserted herein, Plaintiff Pijun Lui has been a shareholder of the Company.

10. Plaintiff Wenwen Yu is a resident of China with an address of Room 401, Unit 4, Building 2, Shizhuan Community, Chaoyang Street, Yunhe District, Cangzhou City, Hebei Province, China. At all times relevant to the claims asserted herein, Plaintiff Wenwen Lu has been a shareholder of the Company.

11. Nominal Defendant, Next Technology Holding, Inc. d/b/a WeTrade Group, Inc., is a corporation formed under the laws of Wyoming with its principal executive office located at 1376-7 Oba, Kasukabe City, Saitama Prefecture, Grandage 3, Takebashi 408, Japan 344-0021. Shares of the Company are traded publicly on the NASDAQ exchange under the ticker symbol NXTT.

12. Because Wyoming is the Company's state of incorporation, the substantive law of Wyoming applies to this dispute.

13. Defendant Hechun Wei was the Company's Chief Executive Officer from on or about December 21, 2022 until on or about December 28, 2023, including at all times relevant to the claims asserted herein. Wei was a signatory of the 8-K. Upon information and belief, Wei is a citizen and resident of China.

14. Defendant Biming Guo was the Company's Director, Chairman of the Board, and Chair of the Audit Committee from on or about December 20, 2022 until on or about December 10, 2023, including at all times relevant to the claims asserted herein. Guo was a signatory to the Statements. Upon information and belief, Guo is a citizen and resident of China.

## SUBSTANTIVE ALLEGATIONS

15. The Company, which was founded in 2019, provides artificial intelligence enabled Software-as-a-Service solutions to companies by designing and deploying cloud computing, big data analytics, and artificial intelligence platforms to companies across the Unites States and Asia.

16. The Company was first listed on the Nasdaq Capital Market on July 19, 2022. At that time, the Company traded under the ticker symbol WETG.

17. In or about May 2023, the Company issued two Schedule 14C Information Statements pursuant to Section 14(c) of the Exchange Act, dated May 9, 2023 and May 19, 2023 (together, the "Statements"). The Statements are substantively identical.

18. The Statements were filed with the United States Securities and Exchange Commission (the "SEC").

19. Guo, on behalf of the Board, and in his capacity as Chairman of the Board, signed the Statements.

20. On or about September 27, 2023, the Company issued a Form 8-K (the "8-K") pursuant to Section 13 or 15(d) of the Exchange Act.

21. The 8-K was filed with the SEC.

22. Wei, in his capacity as Chief Executive Officer of the Company, signed the 8-K.

**The Statements**

23. The Statements notify the Company's holders of common stock (the "Stockholders") that on May 9, 2023, the Company received a majority written shareholder consent in lieu of a special meeting of the Stockholders representing 51.9% of the Company's outstanding shares of common stock (the "Majority Stockholders") authorizing a reverse stock split of the outstanding shares of the Company's common stock at a split ratio of between 1-for-50 and 1-for-200 (the "Reverse Split").

24. The Statements contained statements representing that the Board approved, and recommended to the Majority Stockholders that they approve, the Reverse Split.

25. The Statements contained statements representing that the written consent of the Majority Stockholders for the Reverse Split was obtained pursuant to Section 17-16-704 of the Wyoming Business Corporation Act.

26. Pursuant to the Statements, the Company required an affirmative vote of at least 50% of the outstanding voting stock to approve the Reverse Split.

27. The Statements provide that as of May 2, 2023, there were issued and outstanding 195,057,503 shares of the Company's common stock with no par value.

28. The Statements contained statements representing that, on May 9, 2023, Plaintiff AiShangYou, and Future Science and Technology Co., Ltd. ("FSL"), which collectively owned 51.9% of the Company's outstanding common stock at that time, consented in writing to the Reverse Split.

29. On May 9, 2023 and/or May 19, 2023, AiShangYou owned 49,035,182 shares or 25.1% of the Company's common stock.

30. On May 9, 2023 and/or May 19, 2023, FSL owned 52,290,290 shares or 26.8% of the Company's common stock.

31. The Statements specified that at that time Zheng Dai had sole voting and dispositive power over the shares held by FSL.

32. The Reverse Split reduced the number of shares by a 1-for-50 ratio and increased the share price proportionally by a 1-for-200 ratio.

33. Thus, the Reverse Split caused each share of common stock outstanding to be converted and reduced into a one-fiftieth to two-hundredths of a share of common stock.

34. The Statements declared that the Reverse Split would not affect the par value per share of the Company's common stock because the Company's common stock does not have par value.

35. Per the Statements, the bid price of the Company's common stock on May 8, 2023 was $0.061 per share.

36. The Reverse Split was to become effective not less than 20 days after the date of the May 9, 2023 Statement being mailed to the Stockholders.

37. The Reverse Split decreased the outstanding shares of the Company's common stock to between 3,901,150 and 925,287 shares.

38. The Statements set forth the following rationale for the Reverse Split:

> "The Board believes that the Reverse Split is in the best interest of the Company and its Stockholders because it would reduce the number of shares of its Common Stock outstanding to amounts that the Board believes are more reasonable in light of its size and market capitalization. The Company requires additional capital for its operations and does not believe that it will be able to raise the necessary capital unless the price of the Common Stock is higher than the current Common Stock price levels. However, no assurance can be given that the Reverse Split will result in

> any increase in the Common Stock price or that the Company will be able to complete any financing following the Reverse Split.
>
> The result of the Reverse Split will only affect the issued and outstanding shares. It is important we preserve our flexibility to issue additional shares of Common Stock. The Board believes that the additional authorized shares of Common Stock is advisable to provide us with the flexibility to take advantage of opportunities to issue such stock in order to obtain capital, as consideration for possible acquisitions or for other purposes including, without limitation, the issuance of additional shares of Common Stock through stock splits and stock dividends in appropriate circumstances. There are, at present, no plans, understandings, agreements or arrangements concerning the issuance of additional shares of Common Stock."

39. In or around November 2024, Plaintiffs discovered that the material representations in the Statements concerning FSL's consent to the Reverse Split were false.

40. Specifically, Plaintiffs learned that at the time that FSL purported to have consented to the Reverse Split, Zheng Dai, who ostensibly had sole voting and dispositive power over the shares held by FSL and had apparently signed the consent form on behalf of FSL, had already transferred his entire interest in FSL prior to the consent.

41. Despite that fact, in the Statements, the Company represented that Zheng Dai was the representative of FSL who approved the Reverse Split on behalf of FSL.

42. Defendants knew, or should have known, that Zheng Dai had transferred his interest in FSL and lacked the ability to act on FSL's behalf at the time that Zheng Dai ostensibly signed the consent on behalf of FSL.

43. Based on information and belief, Zheng Dai advised Plaintiffs that he did not in fact sign the consent agreement on behalf of FSL authorizing the Reverse Split.

44. Thus, Zheng Dai's signature on the consent agreement concerning FSL's consent to the Reverse Split was either forged or otherwise improperly obtained under false or misleading circumstances.

45. In the absence of FSL's legitimate consent to the Reverse Split, the Company failed to meet the 50% threshold of the outstanding voting stock that was necessary to approve the Reverse Split.

**The 8-K**

46. The 8-K notifies the Stockholders that on September 27, 2023, the Company entered into a sale and purchase agreement with a buyer unaffiliated with the Company (the "Buyer"), pursuant to which the Company agreed to sell and the Buyer agreed to purchase all the issued and outstanding ordinary shares (the "WT Shares") of a subsidiary of the Company– WeTrade Information Technology Limited (the "Subsidiary") together with its wholly owned subsidiaries (the "Sale").

47. The reported purchase price for the WT Shares was $4,500,000.

48. The 8-K purports that the Sale was completed on September 29, 2023.

49. Specifically, the 8-K provides:

> "On September 27, 2023, Wetrade Group Inc., a Wyoming corporation (the "Company") entered into a sale and purchase agreement (the "Agreement") with a buyer unaffiliated with the Company (the "Buyer"), pursuant to which the Company agreed to sell and the Buyer agreed to purchase all the issued and outstanding ordinary shares (the "WeTrade Information Shares") of WeTrade Information Technology Limited and together with its wholly owned subsidiaries. The purchase price for the WeTrade Information Shares is $4,500,000, which is above the unaudited Net Asset Value ("NAV") of approximately $4,370,000 and valuation amount of $3,500,000. The transaction was completed on September 29, 2023."

50. Corporate records of the Company concerning the Sale conflict with the material representations in the 8-K with respect to the date of the Sale, the consideration involved in the Sale, and the identities of the buyers of the WT Shares.

51. For example, the Company's corporate records show that Dixon Dai Perze (through one of his wholly-owned entities) purchased the Subsidiary for 10,000 Hong Kong dollars on or about December 16, 2023. On December 16, 2023, a Saturday, the reported exchanges rate was $0.128069 U.S. Dollar to $1.00 Hong Kong Dollar, meaning the Subsidiary was purchased for approximately $1,280.69 U.S. Dollars, thus $4,498,719.31 U.S. Dollars less than the sale price reported in the 8-K.

52. Dixon Dai Perze thereafter transferred the ownership of the Subsidiary to DZR Tech Ltd. ("DZR") on January 27, 2024, and DZR thereafter transferred its ownership interest to Dada Business Trading Co., Ltd ("DBT"), whose director is Zheng Dai.

53. Consistent with this ownership history, DBT is listed as the sole shareholder of the Company as of September 4, 2025 in the 2025 annual return from the Hong Kong Companies Registry.

54. Based on information and belief, the Stockholders discovered the material misstatements in the 8-K in or around September 2024 in connection with documents obtained pursuant to a lawsuit in China.

55. The Company has been directly damaged by Defendants' misconduct in an amount not less than $4,498,719.32. There is no legitimate business justification for including false and materially misleading statements in the Statements and 8-K, and such statements were relied on by Stockholders in choosing to hold, sell, or purchase Company stock.

56. Moreover, Guo violated his fiduciary duties to the Company by executing the Statements and falsely publishing Zheng Dai's signature on behalf of FSL notwithstanding that Zheng Dai (i) did not own or control majority voting powers of FSL in or around May 2023 and (ii) purportedly did not sign or consent to the Reverse Split on behalf of FSL.

57. On information and belief, Zheng Dai's signature was fabricated for purposes of FSL's purported consent to the Reverse Split.

58. Guo knew, or should have known, that Zheng Dai's signature was inauthentic and failed to take reasonable steps to inquire and confirm the authenticity of Mr. Dai's signature and the validity of FSL's consent, or knew the signature was acquired for an improper purpose.

59. Additionally, Wei violated his fiduciary duties to the Company by executing the 8-K, which contained materially false affirmative statements concerning the Sale of the WT Shares to Dixon Dai Perze. The statements in the 8-K were materially misleading in that they mispresented the date of Sale, the consideration involved in the Sale, and the identities of the buyers of the WT Shares.

60. Wei, in the capacity as Chair of the Audit Committee, is charged with a duty of oversight over the Company's financial reporting and accuracy, and knew, or should have known, the 8-K contained false or misleading information regarding a significant sale transaction concerning the disposition of a material portion of the assets of the Company and the consideration to be paid.

61. Wei, in the capacity as Chair of the Audit Committee, had an affirmative duty to notify the Board of any financial irregularity or material deviation from the financial information contained in the 8-K.

62. Neither Wei nor Guo having direct knowledge, or being imputed with the knowledge of the public misstatements, took any action to correct the public misstatements in the Statements or 8-K.

63. Each of Guo and Wei by knowingly failing to act to correct misstatements in the Statements and the 8-K, and knowingly concealing truthful information through their continued and persistent failure to disclose truthful information and allowing the misstatements to persist, intended to manipulate, deceive, and perpetrate a fraud upon stockholders.

64. Guo and Wei each enjoyed directly or indirectly financial gain as stockholders through the implied overvaluation of the Company stock.

65. The buying and selling of the Company stock occurred through NASDAQ after the fraudulent 8-K was public, and continued, and constituted a fraud upon the market which materially manipulated the market price of the Company stock. A buyer or seller of the Company stock would reasonably rely on the misstatement that $4,500,000 would inure to the Company through the sale of Subsidiary when in fact its was actually sold for $1,280.69.

66. Plaintiffs, as shareholders of the Company at all times relevant to the claims asserted herein, bring this action derivatively on behalf of and for the benefit of the Company to redress injuries suffered, and to be suffered, by it, as a result of Defendants' misconduct.

67. Plaintiffs have not personally made a demand on the Company's Board to assert the claims set forth herein against Defendants as such a demand would be futile. There is a reasonable doubt that a majority of the Board could have impartially considered whether bringing these claims is in the best interests of the Company and its shareholders.

## CAUSES OF ACTION

### COUNT ONE
### BREACH OF FIDUCIARY DUTY

68. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69. The Defendants, as former directors of the Company during the time when the alleged misconduct herein occurred, owed the Company and its shareholders a fiduciary duty of due care, loyalty, and good faith.

70. Under Wyoming law, the Defendants breached their fiduciary duties by the actions and/or inactions alleged herein in connection with their issuance of corporate records, including the Statements concerning the Reverse Split and the 8-K concerning information about the Sale, which included false and materially misleading statements to Stockholders.

71. The Reverse Split was a material transaction of sufficient importance to require Stockholder approval.

72. The Sale was a material transaction involving a substantial part of the Company's value, and the Defendants breached their fiduciary duties of care and loyalty, and they acted in bad faith, and contrary to the best interests of the Company under the circumstances.

73. The material misrepresentations in the Statements and 8-K serve no legitimate business purpose and do not constitute honest judgments made to lawfully and legitimately further the Company's purpose.

74. Even if not acting in bad faith, the Defendants' actions were undertaken with reckless disregard of the their duties to be reasonably informed as a director of a public company should be in similar circumstances.

75. The material misrepresentations made in the Statements and 8-K are unlawful and are part of the actions undertaken by the Defendants in their capacity as directors.

76. Defendants executed the Statements and 8-K without exercising due care or reasonable diligence to the extent that the Statements and 8-K include materially misleading and/or false statements.

77. Defendants engaged in a sustained failure to take action to correct knowingly false public information causing an ongoing material misrepresentation in the public marketplace and causing harm to Stockholders in violation of their fiduciary duties.

78. Defendants, upon information and belief, failed to disclose material information to the Board about the falsity of the statements made in the Statements and 8-K, or if disclosed, conspired with other Board members to conceal the falsity of the statements made in the Statements and 8-K from the stockholders, and from the public marketplace.

79. As a result of the Defendants' breach of their duties, the Company has suffered and will suffer injury and significant damages in an amount not less than $4,498,719.31, plus interest, attorneys' fees, and costs.

**COUNT TWO**
**BREACH OF CONTRACT**

80. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81. Under Wyoming law, the Defendants breached the terms of the Company's Second Amended Bylaws (the "Bylaws"), which were in effect at the time that the Company issued the materially misleading Statements, and constituted a binding contract.

82. Specifically, Article II, Section 11 of the Company's Bylaws provide:

> "Informal Action by Shareholders. Unless otherwise provided by law, any action required to be taken at a meeting of the shareholders, or any other action which may be taken at a meeting of the shareholders, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all or majority of the shareholders, if allowed by law, entitled to vote with respect to the subject matter thereof. The written consent shall bear the date of signature of the shareholder who signs the consent and be delivered to the corporation for inclusion in the minutes or filing with the corporate records."

83. Based on information and belief, the Company did not hold the required shareholder's meeting prior to filing the Statements even though the Reverse Split was a material transaction of sufficient importance to require Stockholder approval.

84. Moreover, given that FSL's purported consent to the Reverse Split was improperly obtained and/or otherwise non-valid as a result of Zheng Dai ostensibly signing the consent on behalf of FSL despite the fact that his interest in FSL had already been transferred by the time the FSL consent was signed, the Company was required to hold a shareholder meeting or otherwise obtain an effective consent from a duly authorized signatory of FSL.

85. As a result of the Defendants' contractual breaches, the Company has suffered and will suffer injury and significant damages in an amount not less than $4,498,719.31, plus interest, attorneys' fees, and costs.

**COUNT THREE**
**RULE 10b-5 VIOLATION OF SECURITIES EXCHANGE ACT OF 1934**

86. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87. Rule 10b-5 makes it unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, to make any untrue statement of material fact in connection with the purchase or sale of any security.

88. A form 8-K is a mandatory SEC filing under the Exchange Act whereby companies announce major, material events within four days of their occurrence.

89. Companies are required to disclose accurate and truthful information about major, material events to shareholders.

90. A Rule 14 Information Statement is a document a public company is required to send to its shareholders to notify them of a corporate action that has been approved by a majority vote or written consent without the need for a formal shareholder meeting.

91. Companies are required to disclose accurate and truthful information about corporate actions approved by a majority vote or by written consent.

92. The September 27, 2023 form 8-K contained material misrepresentations concerning the Company's sale and purchase agreement, pursuant to which the Company agreed to sell issued and outstanding shares of a subsidiary of the Company.

93. The form 8-K contained material misrepresentations concerning the date of the Sale, the consideration involved in the Sale, and the identified of the buyers of the subsidiary of the WT Shares.

94. The Schedule 14C Information Statements issued by the Company on May 9 and May 19, 2023 contained material misrepresentations concerning the consent purportedly secured by the Company from FSL concerning the Reverse Split.

95. Specifically, while the Information Statements stated that FSL had consented to the Reverse Split and that Zheng Dai had sole voting and dispositive power over the shares held by FSL, the Information Statements were materially misleading because at the time that Zheng Dai had purportedly executed the consent on behalf of FSL, Zheng Dai had already transferred his

entire interest in FSL, and no proxy had been granted to Zheng Dai nor had one been presented to the Company upon which is could rely.

96. Thus, both the form 8-K and the Schedule 14C Information Statements included material misrepresentations at the time they were made.

97. Based on information and belief, at the time Defendants signed the materially misleading Information Statements and 8-K, Defendants knew of the falsity of the statements in the Information Statements and 8-K.

98. Reasonable investors relied on the materially misleading statements in the form 8-K and the Information Statements when purchasing or selling shares of the Company.

99. There is a substantial likelihood that reasonable investors would have made different decisions concerning the purchase and/or sale of Company stock but for the materially misleading statements included in the Statements and 8-K.

100. As a result of the issuance of materially misleading statements, the Company has suffered and will suffer significant injury and damages in an amount not less than $4,498,719.31, plus interest, attorneys' fees, and costs.

**COUNT FOUR**
**RULE 14c-6 VIOLATION OF SECURITIES EXCHANGE ACT OF 1934**

101. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102. Rule 14c-6 makes it unlawful for an information statement to include "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the same meeting or subject matter which has become false or misleading."

103. A Rule 14 Information Statement is a document a public company is required to send to its shareholders to notify them of a corporate action that has been approved by a majority vote or written consent without the need for a formal shareholder meeting.

104. Companies are required to disclose accurate and truthful information about corporate actions approved by a majority vote or by written consent.

105. The Schedule 14C Information Statements issued by the Company on May 9 and May 19, 2023 contained material misrepresentations concerning the consent purportedly secured by the Company from FSL concerning the Reverse Split.

106. Specifically, while the Information Statements stated that FSL had consented to the Reverse Split and that Zheng Dai had sole voting and dispositive power over the shares held by FSL, the Information Statements were materially misleading because at the time that Zheng Dai had purportedly executed the consent on behalf of FSL, Zheng Dai had already transferred his entire interest in FSL and retained no and was given no authority to act on behalf of FSL.

107. At no time thereafter, did the Company correct the information concerning Zheng Dai's purported consent to the Reverse Split on behalf of FSL after learning that at the time Zheng Dai ostensibly signed the consent on behalf of FSL, he had already transferred his entire interest in FSL and had no authority to act on behalf of FSL.

108. As a result of the issuance of materially misleading statements in the Schedule 14C Information Statements, the Company has suffered and will suffer significant injury and damages in an amount not less than $4,498,719.31, plus interest, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs AiShangYou Limited, Pijun Lui, and Wenwen Yu, derivatively on behalf of Nominal Defendant Next Technology Holding, Inc. d/b/a WeTrade Group, Inc., demands judgment and prays the Court enter such judgment on all counts, as follows:

A. Finding this action to be a proper derivative action and Plaintiffs to be proper and adequate representatives of the Company;

B. Finding that the Defendants breached their fiduciary duties to Next Technology Holding, Inc. d/b/a WeTrade Group, Inc., breached contract terms in the Second Amended Bylaws of Next Technology Holding, Inc. d/b/a WeTrade Group, Inc., and violated the Securities and Exchange Act of 1934;

C. Awarding damages sustained by the Company, in an amount no less than $4,498,719.31;

D. Awarding Plaintiffs' costs including attorney's fees incurred in this action;

E. Awarding pre- and post- judgment interest; and

F. Granting such other and further relief as the Court deems just and proper.

Dated: August 31, 2026

**McCARTER & ENGLISH, LLP**
*Attorneys for Plaintiff*

By: */s/ Joseph R. Scholz*

Joseph R. Scholz
Thomas Finn
Benjamin Klein
**McCARTER & ENGLISH, LLP**
250 W. 55th Street, 13th Floor
New York, NY 10019
(212) 609-6800
jscholz@mccarter.com
tfinn@mccarter.com
bklein@mccarter.com